## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROCKHILL INSURANCE COMPANY,**<br>**700 W. 47th St., Suite 350**<br>**Kansas City, MO 64112** | )<br>)<br>)<br>) |
| *Plaintiff,* | )<br>) |
| **v.** | )   Case No.: 1:18-cv-02104<br>) |
| **HOFFMAN-MADISON WATERFRONT, LLC**<br>**680 Water Street, SW**<br>**Washington, D.C. 20024** | )<br>)<br>)<br>) |
| **Serve:  CT CORPORATION SYSTEM**<br>**1015 15th Street, NW**<br>**Suite 1000**<br>**Washington, D.C. 20005** | )<br>)<br>)<br>)<br>) |
| **HOFFMAN-STRUEVER WATERFRONT, LLC**<br>**680 Water Street, SW**<br>**Washington, D.C. 20024** | )<br>)<br>)<br>) |
| **Serve:  CT CORPORATION SYSTEM**<br>**1015 15th Street, NW**<br>**Suite 1000**<br>**Washington, D.C. 20005** | )<br>)<br>)<br>)<br>) |
| **WHARF DISTRICT GP JOINT VENTURE, LLC**<br>**1015 15th Street, NW**<br>**Suite 1000**<br>**Washington, D.C. 20005** | )<br>)<br>)<br>)<br>) |
| **WHARF DISTRICT JOINT VENTURE LP**<br>**1015 15th Street, NW**<br>**Suite 1000**<br>**Washington, D.C. 20005** | )<br>)<br>)<br>)<br>) |
| **WHARF HORIZONTAL REIT, LLC**<br>**690 Water Street, SW**<br>**Washington, D.C. 20024** | )<br>)<br>)<br>)<br>) |
| **[CAPTION CONTINUED]** | )<br>)<br>) |

i

Serve:  **CT CORPORATION SYSTEM**          )
        **1015 15th Street, NW**          )
        **Suite 1000**          )
        **Washington, D.C. 20005**          )
        )
**WHARF HORIZONTAL REIT**          )
**LEASEHOLDER, LLC**          )
**690 Water Street, SW**          )
**Washington, D.C. 20024**          )
        )
Serve:  **CT CORPORATION SYSTEM**          )
        **1015 15th Street, NW**          )
        **Suite 1000**          )
        **Washington, D.C. 20005**          )
        )
**WHARF FISH MARKET REIT**          )
**LEASEHOLDER, LLC**          )
**690 Water Street, SW**          )
**Washington, D.C. 20024**          )
        )
Serve:  **CT CORPORATION SYSTEM**          )
        **1015 15th Street, NW**          )
        **Suite 1000**          )
        **Washington, D.C. 20005**          )
        )
**THE WHARF, INC., t/a THE WHARF**          )
**1100 Maine Avenue, SW**          )
**Washington, D.C. 20024**          )
        )
Serve: **CORPORATION SERVICE**          )
        **COMPANY**          )
        **1090 Vermont Avenue, NW**          )
        **Washington, D.C. 20005**          )
        )
**BRW, INC., t/a CAPTAIN WHITE SEAFOOD**          )
**CITY**          )
**1100 Maine Avenue, SW**          )
**Washington, D.C. 20024**          )
        )
Serve: **CT CORPORATION SYSTEM**          )
        **1015 15th Street, NW**          )
        **Suite 1000**          )
        **Washington, D.C. 20005**          )
        )
        **and**          )
        **[CAPTION CONTINUED]**          )

ii

SALT WATER SEAFOOD, INC., t/a SALT    )
WATER    )
1100 Maine Avenue, SW    )
Washington, D.C. 20024    )
    )
    SERVE:  CT CORPORATION SYSTEM    )
    1015 15th Street, NW    )
    Suite 1000    )
    Washington, D.C. 20005    )
    )
    *Defendants.*    )

## COMPLAINT FOR DECLARATORY JUDGMENT & OTHER RELIEF

Plaintiff, ROCKHILL INSURANCE COMPANY, ("Rockhill"), by and through its attorneys, Kelly M. Lippincott of Carr Maloney P.C. and Adam H. Fleischer and Justin K. Seigler of BatesCarey LLP, *pro hac vice* pending, and for its Complaint for Declaratory Judgment & Other Relief against the above-captioned Defendants, brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., states as follows:

## TABLE OF CONTENTS

**NATURE OF THE ACTION** ................................................................................................ 1

**THE PARTIES** ...................................................................................................................... 5

**JURISDICTION & VENUE** ................................................................................................ 7

**FACTUAL BACKGROUND** .............................................................................................. 7

    I.    THE UNDERLYING PRE-LITIGATION LEASE DISPUTE ........................................................ 7

    II.    THE UNDERLYING LEASE DISPUTE TURNS INTO THE WHARF SUIT ..................................... 9

    III.    THE CONTRACT CLAIMS ASSERTED IN THE UNDERLYING COMPLAINT ............................. 11

    IV.    ROCKHILL AGREES TO PROVIDE A CONDITIONAL DEFENSE WITH RESPECT TO
    THE WHARF SUIT PURSUANT TO A COMPLETE RESERVATION OF RIGHTS ......................... 12

**THE ROCKHILL POLICY** ............................................................................................... 13

**OTHER RELEVANT INSURANCE** ............................................................................... 18

COUNT I – No Duty to Defend or Indemnify the Developers & Recoupment
of Defense Costs ............................................................................................................. 19

   A.   Developer Disputes Are Outside the Policy's Classification Limitation ........... 19

   B.   The Wharf Suit Does Not Allege "Personal & Advertising Injury" ................... 20

   C.   The Policy Excludes Contractual Lease Disputes ................................................. 20

   D.   The Policy Excludes Knowing Violations of Rights ............................................. 21

COUNT II – Right to Equitable Allocation Between Potentially-Covered
& Non-Covered Defense Costs .............................................................................................. 22

COUNT III – No Duty to Defend or Indemnify the Non-Insured
Landlord, Fish Market REIT, & Recoupment of Defense Costs
Incurred on its Behalf .......................................................................................................... 23

## NATURE OF THE ACTION

1.      In this coverage action, Rockhill seeks a declaration that it does not owe a duty to defend or indemnify its insured, Wharf Horizontal REIT Leaseholder, LLC ("WHRL"), or its affiliated entities named as defendants herein (identified individually below and referred to collectively as the "Developers")[1] with respect to the operative complaint in an underlying $2-billion real estate development dispute with The Wharf, Inc., BRW, Inc., and Salt Water Seafood, Inc. (collectively, the "Underlying Plaintiffs"), which is currently pending in this judicial district under case no. 15-cv-01198-CKK (the "Wharf Suit").

---

[1] Defendants Hoffman-Madison Waterfront, LLC ("HMW"), Hoffman-Struever Waterfront, LLC ("HSW"), Wharf District GP Joint Venture, LLC ("WDGPJV"), Wharf District GP Joint Venture, LLC ("WDGPJV"), Wharf Horizontal REIT, LLC ("WHR"), Wharf Horizontal REIT Leaseholder, LLC ("WHRL"), and Wharf Fish Market REIT Leaseholder, LLC ("Fish Market REIT") are collectively referred to herein as the "Developers," and are otherwise individually referred to where appropriate.

2.      In April 2014, WHRL was preparing to take over certain decades-old lease agreements from the District of Columbia (the "District") and become the landlord for a number of commercial barges located at the Municipal Fish Market on the District's Southwest Waterfront.

3.      In preparation for its role as the new landlord of the barges, WHRL (by and through its affiliates) paid approximately $11,000 in premiums to Rockhill for a general liability insurance policy (the "Rockhill Policy") that described the insured operations as "Lessor's Risk." The Policy covers a typical range of landlord-tenant risks under "Coverage A," which includes claims for "bodily injury" arising from the specified covered tenant addresses,  and under "Coverage B," which includes coverage for injury arising from "invasion of the right of private occupancy" of a premises that "a person occupies" if "committed by" its landlord.

4.      Soon after its landlord duties began, the Developers initiated development activities along 27 acres of the Southwest Waterfront (the "Redevelopment Project"), allegedly disrupting the established seafood businesses of its new tenants, the Underlying Plaintiffs.  The tenants' subsequent complaints allegedly prompted the Developers to attempt to evict them from the Municipal Fish Market, and thus began a litigious battle over whether the Redevelopment Project could proceed without resistance from the Underlying Plaintiffs.  The Underlying Plaintiffs responded to the Developers' initial eviction efforts by filing the Wharf Suit, alleging a conspiracy to destroy their businesses and move forward with the Redevelopment Project unimpeded, all in alleged breach of the leases.

5.      After the Underlying Plaintiffs filed the Wharf Suit, WHRL and the other Developers demanded that Rockhill fund the defense of the entirety of their development dispute under the Rockhill Policy.  Rockhill reluctantly agreed, but pursuant to a complete investigation

and reservation of its rights under the Rockhill Policy, which included the right to later withdraw from the defense, given that the Wharf Suit appeared not to be a true, covered "personal and advertising injury" claim.

6.      Since then, the Developers have incurred over $1 million in defense of the Wharf Suit, which includes the costs of the Developers' development and lease renegotiation.  WHRL and the other Developers have forced the costs of their development and lease renegotiation dispute upon an insurance policy that, in reality, provides no coverage for such risks.  Later, when the landlord interests and obligations were transferred to a newly-created entity not insured by Rockhill, Defendant Wharf Fish Market REIT Leaseholder, LLC ("Fish Market REIT"), the Developers continued to bill Rockhill for the cost of defending even this non-insured entity, which to date has refused to contribute any amount towards its own defense in the Wharf Suit. With no end to the Wharf Suit in sight, Rockhill must turn to this Court for a ruling that it is not contractually obligated to continue subsidizing the Developers' legal fight to see their $2billion Redevelopment Project come to fruition.

7.      Specifically, Rockhill submits that it is entitled to the following rulings as a matter of law:

> a. **<u>No Duty to Defend</u>:** The gravamen of the operative complaint in the Wharf Suit does not arise from any enumerated offense under Coverage B of the Rockhill Policy, and in any event is rooted in allegations of breach of contract and conspiracy, which are specifically and unambiguously excluded under the Rockhill Policy.  Therefore, Rockhill has no duty to defend the Developers with respect to the operative complaint in the Wharf Suit and is entitled to recoupment of its defense costs paid to date.
>
> b. **<u>Allocation of Costs & Expenses</u>:** To the extent that any allegations within the operative complaint in the Wharf Suit are found to fall within Coverage B, Rockhill is entitled to be reimbursed for those defense costs which are attributable solely to non-covered claims and issues, including but not limited to:

    i.   costs to renegotiate the Underlying Plaintiffs' leases with Fish Market REIT, which is not an insured under the Rockhill Policy, and which costs are excluded by the Rockhill Policy's contract exclusions;

   ii.   costs arising out of legal consulting to alter or change the Redevelopment Plan, which is not within the lessor's risk of the Rockhill insured, WHRL, and which costs are incurred on behalf of the current landlord, Fish Market REIT, which is not an insured under the Rockhill Policy;

  iii.   costs arising out of the Developers' discovery into the Underlying Plaintiffs' wholesaling activities, which are incurred in the prosecution of affirmative claims to evict the Underlying Plaintiffs on behalf of the current landlord, Fish Market REIT, which is not an insured under the Rockhill Policy;

   iv.   costs arising out of defense counsel's oversight and coordination of the legal aspects of the Redevelopment Project, including responding to specific complaints by the Underlying Plaintiffs regarding disruptive construction activities (*e.g.*, issues involving a sunken barge, the disposal of water from the construction site, the location of construction garbage receptacles and construction fencing, potential problems with animals near or on the premises, and other daily development activities), rather than defending the Developers against the Wharf Suit; and/or

   v.   any other non-covered costs that may be reasonably identified and allocated.

c.  **Separation of Non-Insured Landlord:** Fish Market REIT, the current landlord, is not an insured under the Rockhill Policy, but has nevertheless been forcing Rockhill to pay all legal fees for its defense and efforts to renegotiate its leases with the Underlying Plaintiffs. To alleviate this inequity, this Court should rule that:

    i.   Fish Market REIT must reimburse Rockhill at least fifty percent (50%) of all defense costs incurred since it was added as a party to the Wharf Suit; and either

   ii.   Fish Market REIT must be defended by separate counsel of its own choosing and funding going forward; or

  iii.   the current common defense counsel for the former and current landlords must establish separate billing files so that the costs of defending the current landlord, and of administering the lease and development obligations of the current landlord, may be billed to it, with costs common to the two landlords split between the two files.

**THE PARTIES**

8.      Rockhill is an Arizona insurance company with its principal place of business located in Kansas City, Missouri.

9.      Hoffman-Madison Waterfront, LLC ("HMW") is a limited liability company organized under the laws of the District with its principal place of business located in the District.  Upon information and belief, HMW is a joint venture comprising its members, P.N. Hoffman & Associates, Inc. and Madison Marquette Property Investments, LLC ("Madison Marquette").  P.N. Hoffman & Associates, Inc. is a corporation organized under the laws of the District with its principal place of business located in the District.  Upon information and belief, none of the members of Madison Marquette, and none of HMW's other members, if any, whether persons or business entities, are domiciled in Arizona or Missouri.

10.      Hoffman-Struever Waterfront, LLC ("HSW") is a limited liability company organized under the laws of the District with its principal place of business located in the District.  HMW (*see* ¶ 9 above) is a member of HSW.  Upon information and belief, none of HSW's other members, if any, whether persons or business entities, are domiciled in Arizona or Missouri.

11.      Wharf District GP Joint Venture, LLC ("WDGPJV") is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in the District.  Upon information and belief, none of WDGPJV's members, whether persons or business entities, are domiciled in Arizona or Missouri.

12.      Wharf District Joint Venture LP ("WDJV") is a limited partnership organized under the laws of the State of Delaware with its principal place of business located in the District.  Upon information and belief, HSW (*see* ¶ 10 above), WDGPJV (*see* ¶ 11 above), and

The Public Sector Pension Investment Board (the "Pension Board") are partners in WDJV.  The Pension Board is a Crown Corporation incorporated under the Public Sector Pension Investment Board Act of Canada, with its principal place of business located in Montreal, Canada.

13.     Wharf Horizontal REIT, LLC ("WHR") is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in the District.  WDJV (*see* ¶ 12 above) is the sole member of WHR.

14.     Wharf Horizontal REIT Leaseholder, LLC ("WHRL") is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in the District.  WHR (*see* ¶ 13 above) is the sole member of WHRL.  Insofar as relevant herein, WHRL was the ***former landlord*** of Defendants The Wharf, Inc., BRW, Inc., and Salt Water Seafood, Inc.

15.     Wharf Fish Market REIT Leaseholder, LLC ("Fish Market REIT") is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in the District.  WHR (*see* ¶ 13 above) is the sole member of Fish Market REIT.  Insofar as relevant herein, Fish Market REIT is the ***current landlord*** of Defendants The Wharf, Inc., BRW, Inc., and Salt Water Seafood, Inc.

16.     The Wharf, Inc., t/a The Wharf ("Wharf, Inc."), is a corporation organized under the laws of the District with its principal place of business located in the District.  Rockhill seeks no affirmative relief from Wharf, Inc. other than to bind it to the judgment sought herein.  If Wharf, Inc. will stipulate to be so bound, then Rockhill will voluntarily dismiss it as a defendant in this action.

17.     BRW, Inc., t/a Captain White Seafood City ("Captain White"), is a corporation organized under the laws of the District with its principal place of business located in the

District.  Rockhill seeks no affirmative relief from Captain White other than to bind it to the judgment sought herein.  If Captain White will stipulate to be so bound, then Rockhill will voluntarily dismiss it as a defendant in this action.

18.     Salt Water Seafood, Inc., t/a Salt Water ("Salt Water"), is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business located in the District.  Rockhill seeks no affirmative relief from Salt Water other than to bind it to the judgment sought herein.  If Salt Water will stipulate to be so bound, then Rockhill will voluntarily dismiss it as a defendant in this action.[2]

## JURISDICTION & VENUE

19.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and the defendants, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district.

## FACTUAL BACKGROUND

### I.   THE UNDERLYING PRE-LITIGATION LEASE DISPUTE

21.     Insofar as relevant herein, the operative pleading in the Wharf Suit is the Underlying Plaintiffs' Third Amended Complaint (the "Underlying Complaint"), attached hereto as Exhibit A.

---

[2] Defendants Wharf, Inc., Captain White, and Salt Water are collectively referred to herein as the "Underlying Plaintiffs."

22.     The Underlying Plaintiffs allege that in 2000 and 2001 they entered into 30-year leases with the District which granted them "exclusive use of certain delineated water frontages," defined by lot number, "to run [their] businesses, as well as the right to access and use" the "Common Area" of the Municipal Fish Market, described as those areas "designated for the general use, convenience, and benefit of the commercial tenants in the area and their customers…(*e.g.*[,] restrooms, parking areas, driveways, walkways, loading and unloading areas for deliveries)."  Ex. A at ¶¶ 47, 49, 55.

23.     The Underlying Complaint alleges that in 2006 the District chose HMW (then doing business as HSW) as the primary developer for a $2-billion redevelopment project designed to transform the Southwest Waterfront—specifically, "approximately 27 acres of land between the Municipal Fish Market and Fort McNair"—into a boardwalk strip of "retail shops, residential and office buildings, hotels, and parks" (said project being referred to in the Underlying Complaint and herein as the "Redevelopment Project").  *Id*. at ¶¶ 64-65.

24.     According to the Underlying Complaint, on April 23, 2014, the District assigned the Underlying Plaintiffs' leases to the Developers, "acting through WHRL, to facilitate the Redevelopment Project."  *Id*. at ¶ 70.

25.     After initial construction activities began in May 2014 with the closing of the Water Street access point to the Fish Market, the Underlying Complaint alleges that the Developers "repeatedly encroached onto the Common Area" and "materially interfered with [the Underlying] Plaintiffs' access to the Common Area" (for example, by building a fence there).  *See id*. at ¶¶ 94, 116.

26.     The Underlying Complaint alleges that the Developers met with the Underlying Plaintiffs and the District in May 2014, August 2014, and September 2014 to discuss revisions to

the construction plans to accommodate the Underlying Plaintiffs' complaints, but that the parties were unable to reach an agreement, and disruptive construction activities continued. *See id.* at ¶¶ 122-158.

27.     On April 20, 2015, after HMW noticed that certain construction activities on their barges, counsel for the Developers sent them a "Lease Default Notice" alleging "***violations of the lease*** for failure to obtain necessary construction permits." *Id.* at ¶¶ 160, 169 (emphasis added).

28.     On or about June 25, 2015, the Developers then issued Notices to Quit and Vacate the leased premises to the Underlying Plaintiffs. *See id.* at ¶¶ 176, 178.  Copies of the Notices to Quit are attached hereto as Exhibit B.

29.     In the Notices to Vacate, the Developers alleged that the Underlying Plaintiffs breached their leases by utilizing a certain barge as a dining area and conducting certain construction activities without the requisite landlord approval or permits. *See generally* Ex. B.

## II.     THE UNDERLYING LEASE DISPUTE TURNS INTO THE WHARF SUIT

30.     Upon information and belief, the Underlying Plaintiffs responded to the Developers' Notices to Vacate by filing their initial Complaint in the Wharf Suit on July 23, 2015, naming HMW, WHRL, and the District as the only defendants.

31.     On or about August 6, 2015, WHRL filed formal eviction complaints against the Underlying Plaintiffs in the Superior Court of the District of Columbia under case nos. LTB 18957-15 and LTB 18958-15 (collectively, the "Eviction Proceedings").  Copies of WHRL's Verified Complaints in the Eviction Proceedings are attached hereto as Exhibit C.

32.     In the Eviction Proceedings, WHRL alleged that the Underlying Plaintiffs ***breached their leases***. *See* Ex. C at ¶¶ 3(B)(2)(a), (C).

9

33.     On March 29, 2016, WHRL filed its Counterclaim against the Underlying Plaintiffs in the Wharf Suit, which alleged that the Underlying Plaintiffs **breached their leases** in a number of ways.

34.     Upon information and belief, on or about April 15, 2016, WHRL voluntarily dismissed the Eviction Proceedings.

35.     On May 9, 2016, WHRL filed its Amended Counterclaim against the Underlying Plaintiffs in the Wharf Suit alleging that the Underlying Plaintiffs **breached their leases** in a number of ways, including, *inter alia*, using a certain barge as a dining area.  *See* WHRL's Amended Counterclaim, attached hereto as Exhibit D, at ¶¶ 147-54, 190-95.

36.     On or about October 31, 2016, the original landlord, WHRL, assigned its interest in the Underlying Plaintiffs' leases to a newly-created landlord entity, Fish Market REIT.  In doing so, the new landlord, Fish Market REIT, agreed to be responsible for all attorneys' fees in connection with liability arising from the leased premises accruing after October 31, 2016.  The original landlord, WHRL, likewise agreed to be responsible for attorneys' fees in connection with liability arising from the premises prior to October 31, 2016.

37.     On February 12, 2017, the former landlord, WHRL, filed an "Unopposed Motion to Add Counterclaim-Plaintiff and Defendant" seeking to join the Underlying Plaintiffs' current landlord, Fish Market REIT, as a party in the Wharf Suit, which was granted on February 13, 2017.

38.     On April 26, 2017, the Underlying Plaintiffs filed their Second Amended Complaint in the Wharf Suit, naming—in addition to then-parties HMW, WHRL, Fish Market REIT, and the District—WDGPJV, WHR, HSW, and WDJV as additional defendants.

39.     On September 12, 2017, the Underlying Plaintiffs filed an unsealed copy of the Third Amended Complaint in the Wharf Suit (referred to herein as the "Underlying Complaint"). *See* Ex. A.

40.     The Underlying Complaint alleges that the Wharf Suit "is an action to protect [the Underlying Plaintiffs]…against the destruction of their businesses" by the District and the Developers, who, having found that the Underlying Plaintiffs' "***rights under [their] leases*** conflicted with the District's and with [the Developers'] development plans…entered into a conspiracy to run the [Underlying] Plaintiffs out of the Municipal Fish Market by destroying [their] businesses." *Id.* at ¶¶ 1, 3 (emphasis added). The Underlying Plaintiffs allege that this conspiracy "encompasses a pattern of egregious acts including harassment, governmental overreach, continuous ***material breaches of Plaintiffs' leases***, and unjust attempts to oust the Plaintiffs from their leased property." *Id.* at ¶ 4 (emphasis added).

41.     The Underlying Complaint does not allege any theory of common law negligence or privacy tort against the Developers. *See generally id.*[3]

## III.   THE CONTRACT CLAIMS ASSERTED IN THE UNDERLYING COMPLAINT

42.     The Underlying Complaint asserts the following contract-based claims arising out of the Redevelopment Project:

    a.  **Count IV – Declaratory Judgment**, alleging that the Developers have "ignore[d] the Plaintiffs' lease provisions to conduct unauthorized construction and otherwise encroach on the Municipal Fish Market" and that future construction will ***violate their leases*** (*see* Ex. A at ¶¶ 221-28);

    b.  **Count V – Breach of Lease (Specific Performance & Injunctive Relief)**, seeking an order requiring modifications to access, traffic, and parking plans, and

---

[3] The Underlying Complaint does not use the word "negligent" or any of its variants to refer to the conduct of the Developers.

requiring the Developers to raze buildings already constructed on the Common Area and to install permanent access to the Fish Market (*see id*. at ¶¶ 229-43);

c. **Count VI –Breach of Lease (Damages)**, alleging that the Developers' injurious lease breaches were "intentional," and that the Developers' "willful misconduct" resulted in damages (*see id*. at ¶¶ 244-51);

d. **Count VII – Breach of Covenant of Good Faith & Fair Dealing**, alleging that the Developers have "engag[ed] in a pattern of harassment" and "willfully ***breach[ed] the express lease terms***" (*see id*. at ¶¶ 252-58) (emphasis added);

e. **Count VIII – Trespass & Conversion**, alleging that that the Developers' disruptive conduct has been "outrageous and malicious, wanton, reckless, or in willful disregard" for their rights, and seeking compensatory and punitive damages arising out of the impact of the Redevelopment Project to their businesses (*see id*. at ¶¶ 259-66);

f. **Count IX – Nuisance**, alleging that that the Developers' disruptive conduct has been "outrageous and malicious, wanton, reckless, or in willful disregard" for their rights (*see id*. at ¶¶ 267-73);

g. **Count X – Tortious Interference with Prospective Business Advantage**, alleging that they were harmed by the Developers' "intentional actions in encroaching onto the property, breaching [their] leases, blocking customer access and parking, and harassing [the Underlying Plaintiffs] and their customers" (*see id*. at ¶¶ 274-82); and

h. **Count XI – Unjust Enrichment**, alleging that that the Developers' disruptive conduct has been "outrageous and malicious, wanton, reckless, or in willful disregard" for their rights, and alleging that the Developers have received an undue benefit by moving forward with the Redevelopment Project, allowing the Developers to obtain windfall profits (*see id*. at ¶¶ 283-90).

## IV.   ROCKHILL AGREES TO PROVIDE A CONDITIONAL DEFENSE WITH RESPECT TO THE WHARF SUIT PURSUANT TO A COMPLETE RESERVATION OF RIGHTS

43.    On or about October 9, 2015, Rockhill agreed to defend HMW and WHRL (the only defendants named in the Wharf Suit at that time) pursuant to a complete reservation of rights.  A copy of Rockhill's October 9, 2015 Reservation of Rights is attached hereto as Exhibit E.

44.    On or about February 27, 2017, after the current landlord, Fish Market REIT, was added to the Wharf Suit, Rockhill supplemented its prior reservation of rights, denying coverage

for Fish Market REIT because it was created after the termination of the Rockhill Policy, and because the Rockhill Policy does not otherwise extend insured status to Fish Market REIT.  *See* Rockhill's February 27, 2017 Supplemental Reservation of Rights, attached hereto as Exhibit F, at 2, 8.

45.     On January 15, 2018 and February 16, 2018, Rockhill issued additional correspondence to the current landlord, Fish Market REIT, reiterating that it does not qualify as an insured under the Rockhill Policy, and requesting that Fish Market REIT contribute fifty percent (50%) of all defense costs incurred by Rockhill since Fish Market REIT's inclusion in the Wharf Suit on February 13, 2017.  *See* Rockhill's January 15, 2018 and February 16, 2018 Letters to Fish Market REIT, attached hereto as Exhibits G and H.

## THE ROCKHILL POLICY

46.     Rockhill issued Commercial General Liability (CGL) policy no. GENL009195-00 to WHRL, HSW and various other Named Insureds for the period April 23, 2014 (the same day that the District assigned the Underlying Plaintiffs' leases to WHRL) and terminating on April 23, 2015 (the "Rockhill Policy").  A copy of the Rockhill Policy is attached hereto as Exhibit I.

47.     During the application process, one or more officers, employees, agents, brokers, or other affiliates of the Developers represented to Rockhill that the Developers would be covered as Additional Insureds with respect to the Redevelopment Project under a Contractor Controlled Insurance Program ("CCIP") providing limits of approximately $200 million, while Rockhill would provide the coverage for lessor's risk only.

48.     The differentiation between development risks not covered by Rockhill and lessor's risk was ultimately memorialized in the Rockhill Policy, which contains a "Classification Limitation Endorsement," form no. RHIC 1186 02/12, providing: "This insurance

applies only to locations and operations that are described under 'business description'…on the Declarations page…of this policy…If any operation(s) and/or location(s) are not so described, they are not covered hereunder."  Ex. I at RHIC000024.  The Rockhill Policy lists the insureds' "Business Description" as "Lessor's Risk."  *Id*. at RHIC000005.

49.     The Rockhill Policy also notes that certain parking areas were covered, but for "lessor's risk only," and that certain non-occupied areas were covered, but for "lessor's risk only."  *Id*. at RHIC000018.

50.     Additionally, the Rockhill Policy contains a "Limitation of Coverage to Designated Premises or Project" endorsement, form no. CG 21 44 07 98, which provides an option for the insured to designate a specific development project to be covered for "personal and advertising injury."  *See id*. at RHIC000056.  Under "Project," the Schedule of the "Limitation of Coverage to Designated Premises or Project" endorsement is ***blank*** and does not identify any development or construction project.  *See id*.

51.     The Rockhill Policy provides CGL coverage under form no. CG 00 01 12 04, which provides, in relevant part, as follows:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **V** – Definitions.

### SECTION I - COVERAGES

14

\*       \*       \*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.      **Insuring Agreement**

    a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

\*       \*       \*

    b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*Id*. at RHIC000029-30.

52.      Insofar as relevant herein, the Rockhill Policy contains the following exclusions:

2.      **Exclusions**

This insurance does not apply to:

    a.      **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\*       \*       \*

    e.      **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

    f.      **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

\*       \*       \*

15

*Id*. at RHIC000030.

53.     Insofar as relevant herein, the Rockhill Policy contains the following provisions

relating to which entities qualify as insureds under the Rockhill Policy:

**SECTION II – WHO IS AN INSURED**

    **1.**    If you are designated in the Declarations as:

*    *    *

    **b.**    A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.**    A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insured, but only with respect to their duties as your managers.

*    *    *

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

*    *    *

*Id*. at RHIC000032-33.

54.     Insofar as relevant herein, the Rockhill Policy contains the following definition:

**SECTION V – DEFINITIONS**

*    *    *

    **14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b**.    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

16

**d**.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e**.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f**.     The use of another's advertising idea in your "advertisement"; or

**g**.     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*     \*     \*

*Id*. at RHIC000038.

55.     The Rockhill Policy contains an endorsement entitled "Breach of Contract Exclusion," form no. RHIC 1203 (6/12), which provides:

This insurance does not apply, nor do we have a duty to defend any claim or 'suit' for…'personal and advertising injury' arising directly or indirectly out of the following:

**a.**     Breach of express or implied contract;

**b.**     Breach of express or implied warranty;

**c.**     Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

**d.**     Libel, slander or defamation arising out of or within the contractual relationship.

\*     \*     \*

*Id*. at RHIC000023.

56.     The Rockhill Policy contains a "Named Insured Endorsement," form no. RHIC 1080 (1/07), which amends the Named Insured on the Declarations page to include certain additional Named Insureds, including HMW (a limited liability company), WHRL (a limited liability company), and WDJV (a limited partnership).  *Id*. at RHIC000068.

57.     The Underlying Plaintiffs' current landlord, Fish Market REIT, is ***not listed*** in the Rockhill Policy's Declarations as a Named Insured, ***nor is it listed*** in the Rockhill Policy's "Named Insured Endorsement," form no. RHIC 1080 (1/07).  *See id*.

17

**OTHER RELEVANT INSURANCE**

58.     Rockhill has requested that the Developers provide it with copies of any other liability insurance policies that might provide coverage for the Redevelopment Project and/or the Underlying Plaintiffs' claims in the Wharf Suit.

59.     In response, the Developers provided Rockhill with an Owners & Contractors Protective Liability policy that incepted on October 13, 2016, over *two years* after the Redevelopment Project began in the spring of 2014.

60.     The Underlying Complaint alleges that HSW, HMW, WHR, WHRL, and WDGPJV are all listed as Additional Insureds on a Certificate of Liability Insurance issued to affiliated company P.N. Hoffman & Associates.  Ex. A at ¶ 32(h).  A copy of the Certificate is attached hereto as Exhibit J.

61.     The Certificate shows a General Liability policy providing "personal and advertising injury" coverage with a general aggregate limit of $4 million applicable on a "per project" basis.  *See* Ex. J.

62.     Under "Description of Operations," the Certificate states "The Wharf Pier 4," which is, upon information and belief, part of the Redevelopment Project.  *See id.*

63.     Upon information and belief, one or more of the Developers were listed as insureds under a policy or policies of liability insurance—not including any policies issued by Rockhill—in effect during the initial construction of the Redevelopment Project in 2014 and 2015.

64.     As of the date of filing this action, the Developers have not provided Rockhill with a copy of any insurance policy in effect during the initial construction of the Redevelopment Project in 2014 and 2015.

## COUNT I
### NO DUTY TO DEFEND OR INDEMNIFY THE DEVELOPERS
### & RECOUPMENT OF DEFENSE COSTS

65.     Rockhill restates and incorporates the allegations of paragraphs 1 through 64, above, as if set forth fully herein.

### A.   DEVELOPER DISPUTES ARE OUTSIDE THE POLICY'S CLASSIFICATION LIMITATION

66.     Considering the "Classification Limitation" endorsement, "Limitation of Coverage to Designated Premises or Project" endorsement, and "Location Schedule" together, the Rockhill Policy only covers Rockhill's insureds for "lessor's risk" "operations" in connection with the "ownership, maintenance or use" of the Fish Market or "operations necessary or incidental" to the Fish Market.

67.     The Rockhill Policy does not cover risks that its insureds may undertake as real estate developers, including construction risks, which WHRL and/or its affiliates represented to Rockhill during underwriting would be addressed under a separate $200 million policy or tower of insurance for the construction of the Redevelopment Project.

68.     The gravamen of the Underlying Plaintiffs' allegations of liability against the Developers is that the Developers' planning, design, and construction activities in connection with the Redevelopment Project harmed the Underlying Plaintiffs' businesses. *See generally* Ex. A.

69.     As such, the Underlying Plaintiffs' allegations of liability against the Developers are not based on "lessor's risk" "operations" in connection with the "ownership, maintenance or use" of the Fish Market or "operations necessary or incidental" to the Fish Market.

70.     Rather, the Underlying Complaint's allegations of liability against the Developers are based on developer's risk operations in connection with a specific construction project, which is not covered under the Rockhill Policy.

## B.  THE WHARF SUIT DOES NOT ALLEGE "PERSONAL & ADVERTISING INJURY"

71.     Additionally, in order for the Rockhill Policy "personal and advertising injury" coverage for "invasion of the right of private occupancy" to apply, the underlying claim must be brought by a natural "person" and predicated on a right of private occupancy or possessory interest held by the underlying claimant, and the offense must have been "committed by or on behalf of" the landlord or lessor.

72.     Each of the Underlying Plaintiffs is a corporation, and none of the Underlying Plaintiffs is a natural person, and therefore the "personal injury" coverage for "invasion of the right of private occupancy" of a "person" does not apply.

73.     Additionally, the Wharf Suit's allegations of liability against the Developers arise out of alleged encroachment to the Common Area of the Fish Market, and by definition and as a matter of law a tenant does not have a right of private occupancy or possessory interest in a common area.

74.     Also, given the gravamen of the Underlying Complaint, the Underlying Plaintiffs' allegations of liability against the Developers are not based on any act "committed by or on behalf of" the landlord of the Fish Market in its capacity as such, but instead on acts "committed by or on behalf of" the Developers in their capacity as developers.

## C.  THE POLICY EXCLUDES CONTRACTUAL LEASE DISPUTES

75.     To the extent that the Underlying Complaint alleges "personal and advertising injury," the gravamen of the Wharf Suit derives directly from alleged breaches of the

commercial lease agreements, which are excluded claims under the Rockhill Policy pursuant to the Breach of Contract Exclusion Endorsement, as well as the "personal and advertising injury" exclusions for Contractual Liability and Breach of Contract.  *See generally* Ex. A; Ex. I at RHIC000023, RHIC000030.

### D. THE POLICY EXCLUDES KNOWING VIOLATIONS OF RIGHTS

76.     To the extent that the Underlying Complaint alleges "personal and advertising injury," it alleges throughout that the Underlying Plaintiffs' damages were caused by the Developers' conspiracy to violate the Underlying Plaintiffs' commercial leases, destroy their businesses, and oust them from the leased premises in order to proceed unhindered with the Redevelopment Project, thus falling within the Rockhill Policies' exclusion for "Knowing Violation of Rights of Another." *See generally* Ex. A; Ex. I at RHIC000030.

77.     For the foregoing reasons, Rockhill does not owe a duty to defend or indemnify the Developers with respect to the Underlying Complaint in the Wharf Suit, and is entitled to recoupment of attorneys' fees, costs, and expenses paid by Rockhill in defense of the Wharf Suit.

WHEREFORE, the Plaintiff, ROCKHILL INSURANCE COMPANY, prays that this Honorable Court enter an order finding and declaring that it does not owe a duty to defend or indemnify the Defendants, WHARF FISH MARKET REIT LEASEHOLDER, LLC,  WHARF DISTRICT GP JOINT VENTURE, LLC, WHARF HORIZONTAL REIT, LLC,  HOFFMAN-MADISON WATERFRONT, LLC, WHARF HORIZONTAL REIT LEASEHOLDER, LLC, HOFFMAN-STRUEVER WATERFRONT, LLC, and WHARF DISTRICT JOINT VENTURE LP, LLC, under the Rockhill Policy with respect to the Underlying Complaint in the Wharf Suit, that Rockhill is entitled to recoupment of attorneys' fees, costs, and expenses incurred in defense

of non-covered claims, and for such other and further relief as this Court deems fair and just under the circumstances.

## COUNT II
### RIGHT TO EQUITABLE ALLOCATION BETWEEN
### POTENTIALLY-COVERED & NON-COVERED DEFENSE COSTS

78.   Rockhill restates and incorporates the allegations of paragraphs 1 through 64, above, as if set forth fully herein.

79.   In addition and in the alternative to Count I, and to the extent that Rockhill does owe a continuing duty to defend one or more of the Developers with respect to the Underlying Complaint in the Wharf Suit, Rockhill is entitled to recover those significant portions of its defense costs that are incurred in connection with non-covered claims and issues, along the following lines, pled in the alternative and without waiver to any additional grounds for allocation:

   a.   **Lease Renegotiation & Drafting:** Defense counsel has incurred substantial attorneys' fees and other expenses in an effort to renegotiate and redraft the Underlying Plaintiffs' leases. These costs are incurred on behalf of the current landlord, Fish Market REIT, which is not an insured under the Rockhill Policy, and otherwise fall within the Policy's contract exclusions.

   b.   **Expert Discovery of Development Modifications:** Defense counsel has incurred substantial attorneys' fees and other expenses to address proposed changes to the Redevelopment, including plans relating to parking feasibility, loading, sight lines, traffic, and other design issues. These costs are incurred on behalf of the current landlord, Fish Market REIT, which is not an insured under the Rockhill Policy, do not fall within the lessor's risk of the Policy, and otherwise fall within the Policy's contract exclusions.

   c.   **Discovery Regarding Wholesaling Activities:** Defense counsel has incurred substantial attorneys' fees and other expenses in an effort to establish the Underlying Plaintiffs' seafood wholesaling activities on the leased premises. These costly areas of inquiry are directly related to the Developers' affirmative claims that the Underlying Plaintiffs' have breached their leases and should be evicted. These costs are incurred on behalf of the current landlord, Fish Market REIT, which is not an insured under the Rockhill Policy, and are not otherwise associated with any potentially-covered claim.

22

    d.  **Redevelopment Oversight & Coordination:** Defense counsel has incurred substantial attorneys' fees and other expenses to oversee, coordinate, manage, and administer the Developers' responses to complaints arising out of the Redevelopment Project, including issues relating to a sunken barge near the Underlying Plaintiffs' barges, the disposal of water from the construction site near the barges (which was recently pled in a Motion for Temporary Restraining Order in the Wharf Suit), the location of construction garbage receptacles and construction fencing near or on the Common Area of the Fish Market, potential problems with animals at the Fish Market, and other day-to-day development issues. These costs are incurred on behalf of the current landlord, Fish Market REIT, which is not an insured under the Rockhill Policy, and the Developers (in their capacity as such), not to defend against potentially-covered claims arising during Rockhill's coverage period.

    e.  **Other Non-Covered Costs:** To the extent that defense counsel continues to bill Rockhill for any other costs that may reasonably be identified and allocated to the defense of non-covered claims or parties, or to the non-covered prosecution of affirmative claims, or to the day-to-day operation of the Developers' or landlord's businesses, those costs are subject to recoupment by Rockhill.

WHEREFORE, the Plaintiff, ROCKHILL INSURANCE COMPANY, prays that this Honorable Court enter an order finding and declaring that it is entitled to an equitable allocation between any potentially-covered defense costs and non-covered costs as set forth above, and for such other and further relief as this Court deems fair and just under the circumstances.

## COUNT III
### NO DUTY TO DEFEND OR INDEMNIFY THE
### NON-INSURED LANDLORD, FISH MARKET REIT, &
### RECOUPMENT OF DEFENSE COSTS INCURRED ON ITS BEHALF

80.    Rockhill restates and incorporates the allegations of paragraphs 1 through 64, above, as if set forth fully herein.

81.    The Underlying Plaintiffs' current landlord, Fish Market REIT, was created and/or organized as a limited liability company *after* the termination of the Rockhill Policy occurred on April 23, 2015.

82.    Fish Market REIT is not listed anywhere in the Rockhill Policy as a Named Insured. Likewise, Fish Market REIT was not a member, manager, or partner of HSW, HMW,

WHRL, WDJV, or any other entity listed in the Rockhill Policy's "Named Insured Endorsement" during the Rockhill Policy's effective period.

83.      As such, Fish Market REIT is not an "insured" under the Rockhill Policy with respect to its own conduct, or the conduct of any "insured" under the Rockhill Policy, with respect to the Wharf Suit.

84.      Moreover, because Section II of the Rockhill Policy provides that "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations," none of the other Developers is covered with respect to Fish Market REIT's conduct.

85.      Since Fish Market REIT's voluntary joinder in the Wharf Suit in February 2017, Rockhill has paid nearly $1 million in defense costs on behalf of the Developers in the Wharf Suit, including on behalf of Fish Market REIT subject to Rockhill's February 27, 2017 Supplemental Reservation of Rights (Ex. F).

86.      As of the date of filing this action, despite multiple requests (including but not limited to the letters attached hereto as Exhibits G and H), Fish Market REIT has not agreed to contribute any amount towards its own defense in the Wharf Suit.

87.      Because Fish Market REIT is not an insured under the Rockhill Polices, it was never entitled to a defense from Rockhill in connection with the Wharf Suit, and therefore Rockhill is entitled to reimbursement from Fish Market REIT for Fish Market REIT's equitable share of defense costs incurred since its addition to the Wharf Suit in February 2017.

88.      For the foregoing reasons, Rockhill requests that this Court order Fish Market REIT to reimburse Rockhill at least fifty percent (50%) of all defense costs incurred since it was added as a party to the Wharf Suit.  To the extent that this Court finds that Rockhill has a

continuing duty to defend any of the other Developers with respect to the Underlying Complaint, then this Court should further order as follows:

> a.   the current landlord, Fish Market REIT, must be defended by separate counsel of its own choosing and funding going forward; or
>
> b.   the current common defense counsel for the former and current landlords must establish separate billing files so that the costs of defending the current landlord, and of administering the lease and development obligations of the current landlord,  may be billed to it, with costs common to the two landlords split between the two files.

WHEREFORE, the Plaintiff, ROCKHILL INSURANCE COMPANY, prays that this Honorable Court enter an order finding and declaring that it does not owe a duty to defend or indemnify the Defendant, WHARF FISH MARKET REIT LEASEHOLDER, LLC, under the Rockhill Policy with respect to the Underlying Complaint in the Wharf Suit, that the Defendant must reimburse the Plaintiff for defense costs incurred on the Defendant's behalf since its joinder in the Wharf Suit as set forth herein above, that the Defendant must modify its legal representation as set forth above in order to prevent it or its counsel from billing the Plaintiff for its defense costs in the future, and for such other and further relief as this Court deems fair and just under the circumstances.

Dated this 10th day of September, 2018.

> Respectfully submitted,
> ROCKHILL INSURANCE COMPANY
>
> By: */s/ Kelly M. Lippincott*
> Kelly M. Lippincott
> CARR MALONEY P.C.
> 2020 K Street, N.W., Suite 850
> Washington, D.C.  20006
> Tel: (202) 310-5591
> Fax: (202) 310-5555
> kelly.lippincott@carrmaloney.com
>
> By: */s/ Adam H. Fleischer*

25

Adam H. Fleischer (*pro hac* pending)
Justin K. Seigler (*pro hac* pending)
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois  60606
Tel: (312) 762-3100
Fax: (312) 762-3200
afleischer@batescarey.com
jseigler@batescarey.com

2031364